# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:05CV0009-ERW |
| ) | |
| MISSOURI ELECTRIC COOPERATIVE ) | |
| EMPLOYEE CREDIT UNION, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue (doc. #6).

**I. Background**

Christopher Collins, Plaintiff, filed a petition against Missouri Electric Cooperatives Employees Credit Union ("MECECU"), Defendant, in the Eastern District of Missouri ("Eastern District") on January 10, 2005 (doc. #1). Collins alleged violations of the Electronic Fund Transfer Act. 15 U.S.C. § 1693m (2000). On January 21, 2005, this case was assigned to Magistrate Judge Frederick R. Buckles for a report and recommendation. Subsequently, MECECU filed a motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue (doc. #6). On February 24, 2005, this case was reassigned to this court.

MECECU is a credit union organized under Missouri law and licensed to do business within the state. Collins is a permanent resident of New Madrid, Missouri, located within the

1

Eastern District, but he is currently incarcerated in Tennessee. MECECU offers membership to employees of rural electric cooperatives throughout Missouri, including both employees residing in the Western District of Missouri ("Western District") and the Eastern District. MECECU's office and principal place of business is located in the Western District, and MECECU does not operate any facilities in the Eastern District. MECECU issued Collins an interest-bearing share and share draft account in 1994 as a result of his employment with Associated Electric Cooperative, Inc. Associated Electric Cooperative, Inc. is located within the Eastern District. As part of his membership, Collins participated in MECECU's Electronic Fund Transfer Program, which required signing an Electronic Fund Transfer Agreement. The Electronic Fund Transfer Agreement contained a governing law clause which provided that "[a]ny disputes regarding this Agreement shall be subject to the jurisdiction of the court of the county in which the Credit Union is located." (doc. #6.2). The specific events that gave rise to Collins' Electronic Fund Transfer Act claim occurred after unauthorized withdrawals were made on Collins' VISA check card.

**II. Discussion**

A. *Motion to Dismiss for Improper Venue*

There are differing views on who bears the burden of establishing that venue is improper. This Court adopts the view that "once a defendant raises the issue of proper venue by motion, the burden of proof is placed upon the plaintiff to sustain venue." *Beckley v. Auto Profit Masters, L.L.C.*, 266 F.Supp.2d 1001, 1003 (S.D. Iowa 2003) (citing *Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963)). *See Kobush v. Am. Suzuki Motor Corp.*, No. 89-4332-CV-C-9, 1990 WL

13511, at *1 (W.D. Mo. Feb. 6, 1990). *See generally* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3826 (3d ed. 1992) (finding that placing the burden on the plaintiff is the better view); *Intercoast Capital Co. v. Wailuku River Hydroelectric Ltd. P'ship*, No. 4:04-CV-40304, 2005 WL 290011, at *3 n.4 (S.D. Iowa Jan. 19, 2005) (noting that the Eighth Circuit has not commented on the issue and references numerous courts that have adopted the Wright and Miller approach).

First, MECECU argues that the only proper venue for this action is the Western District because Collins entered into an Electronic Fund Transfer Agreement which contained a governing law clause. The governing law clause has no bearing on this case because it provides that "[a]ny disputes regarding this Agreement shall be subject to the jurisdiction of the court of the county in which the Credit Union is located." (doc. #6.2). Collins brings this action under the Electronic Fund Transfer Act. Collins does not allege violations regarding the Electronic Fund Transfer Agreement.[1]

Alternatively, MECECU argues that this action should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) because MECECU does not have sufficient contacts to make venue proper under 28 U.S.C. § 1391(c). Since this action is not founded solely on diversity of citizenship, but is based on violations of federal law, the applicable venue provision is 28 U.S.C. 1391(b). MECECU's argument is based on 28 U.S.C. § 1391(b)(1) which

---

[1] The result may have been different had the language of the clause been more general. *See generally Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 693-94 (8th Cir. 1997) (discussing the phrase "hereunder"); *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) (discussing the phrase "arising out of"); *Highlander Golf, Inc. v. Wal-Mart Stores, Inc.*, 115 F.Supp.2d 1157, 1163 n.4 (D. S.D. 2000)

3

provides that a civil action may be brought in "a judicial district where any defendant resides."

28 U.S.C. § 1391(b) (2000). 28 U.S.C. § 1391(c) defines a corporation's residence as,

> any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contracts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(c) (2000).[2] MECECU's argument focuses on its lack of contacts with the Eastern District.

The Eighth Circuit analyzes personal jurisdiction in two steps. First, the court examines "whether the exercise of jurisdiction is proper under the forum state's long-arm statute." *Dakota Indus.*, *Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387-88 (8th Cir. 1991). Second, if the court finds the state's requirements satisfied, the court examines "whether the exercise of personal jurisdiction comports with due process." *Id.* at 1388. *See also Enter. Rent-A-Car Co. v. U-Haul Int'l*, 327 F.Supp.2d 1032, 1036 (E.D. Mo. 2004) (noting that for federal question subject matter jurisdiction "the court may exercise personal jurisdiction over a defendant if the plaintiff has properly served the defendant with process under the forum state's long-arm statute and if the defendant has sufficient contacts with the forum state to satisfy procedural due process."); *Kobush*, 1990 WL 13511, at *1-*2 (applying two part test for personal jurisdiction to 28 U.S.C. §

---

[2] Collins argues that 15 U.S.C. § 1693m(g) allows for nationwide service of process. This provision provides, "without regard to the amount in controversy, any action under this section may be brought in any United States district court of competent jurisdiction." 15 U.S.C. § 1693m(g) (2000). This provision provides jurisdiction to all district courts but is silent regarding nationwide service of process.

1391(c)).

Jurisdiction under the Missouri long-arm statute merges with the analysis for due process. The Missouri legislature's "ultimate objective was to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause." *Clune v. Alimak AB*, 233 F.3d 538, 541 (8th Cir. 2000) (quoting *State ex rel. Deere and Co. v. Pinnell*, 454 S.W.2d 889, 892 (Mo. 1970)); *see also State ex rel. Newport v. Wiesman*, 627 S.W.2d 874, 876 (Mo. 1982). Despite the "list of enumerated circumstances" in the statute[3], "the examination of whether Missouri's long-arm statute has been satisfied is coextensive with whether the assertion of person[al] jurisdiction over the defendant meets the requirement of due process, and analysis is collapsed into the single question of whether asserting jurisdiction violates Due Process." *Bell v. Imperial Palace Hotel/Casino, Inc.*, 200 F.Supp.2d 1082, 1085-85 (E.D.Mo. 2001). Therefore, the decisive factor in the Court's venue analysis is whether MECECU's contacts with the Eastern District comport with due process.

The Due Process Clause protects an individual or corporate defendant from a binding judgment in a forum in which it "has no contracts, ties, or relations." *Intn'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). In order to satisfy due process, a defendant must have certain minimum contacts with the state so "that the maintenance of the suit does not offend

---

[3] Some Missouri cases still utilize a two-part analysis: (1) whether the defendant's actions fall within the categories of the state statute, and (2) whether the assertion of jurisdiction comports with federal due process. *Products Plus, Inc. v. Clean Green,* Inc., 112 S.W.3d 120, 124 (Mo.App. S.D. 2003) *citing Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. 1997). The Missouri long-arm statute confers jurisdiction on any corporation that transacts business within the state. *See* Mo. Rev. Stat. § 506.500.1 (2000). Therefore, since MECECU conducts business within the state, its actions do fall under the Missouri long-arm statute.

5

'traditional notions of fair play and substantial justice.'" *Id*. at 316 (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A corporation purposefully directing activities at the forum state satisfies the minimum contacts requirement. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 694, 774-75 (1984). Additionally, "with respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (citing *Travelers Health Ass'n. v. Virginia*, 339 U.S. 643, 647 (1950)). Furthermore, the Supreme Court found that jurisdictional requirements could still be met despite the defendant never stepping foot in the forum because "an inescapable fact of modern commercial life [is] that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Id*. at 476. Additionally, a corporation satisfies the requirements for specific jurisdiction when "the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Burlington Indus., Inc. v. Maple Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The Eighth Circuit utilizes a five-factor test for analyzing whether the defendant's contacts satisfy due process. *Id*. at 1102. These factors include "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Id*. The Eighth Circuit finds that "the analysis does not permit a mechanical application of these factors." *Soo Line R.R. Co. v. Hawker Siddeley Can., Inc.*, 950

6

F.2d 526, 529 (8th Cir. 1991). Additionally, the Eighth Circuit views "the first three factors being of primary importance." *Burlington Indus., Inc.*, 97 F.3d at 1102.

MECECU has sufficient contacts with the Eastern District to satisfy the Eighth Circuit's test. The first three factors, which are of primary importance, illustrate the sufficiency of MECECU's contacts. First, MECECU solicits members from rural electric cooperatives throughout the state of Missouri, including the Eastern District. Collins became a member of MECECU because of his employment at a rural electric cooperative. Members, including Collins, provide the capital with which MECECU operates. Although MECECU's only office is located in the Western District, its members reside throughout the state. Second, MECECU maintains accounts with numerous residents of the Eastern District, and the maintenance of these accounts requires frequent communication with residents of the Eastern District. For example, MECECU mailed Collins periodic statements and letters concerning his account. Third, MECECU's contacts with the Eastern District directly relate to Collin's cause of action. MECECU purposefully directed its activities at residents of the Eastern District, and Collins' claim directly relates to MECECU's activities within the Eastern District.

The secondary factors also illustrate the sufficiency of MECECU's contacts. First, Congress's primary purpose in passing the Electronic Fund Transfer Act was "the creation of substantive consumer rights." S. Rep. No. 95-915, at 3 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9403, 9405. In order to accomplish this goal, Congress provided that any action under the Electronic Fund Transfer Act "may be brought in any United States district court." 15 U.S.C. § 1693m(g) (2000). An examination of similar consumer protection legislation provides an insight

into Congress's motive. In *Lachman v. Bank of Louisiana*, the court found that the purpose of the Fair Credit Billing Act (15 U.S.C. § 1666) and the Fair Debt Collection Practices Act (15 U.S.C. § 1692) "would be frustrated if consumers had to travel long distances to file and prosecute lawsuits against banks and credit card issuers, particularly in light of the limited liability established by the acts." 510 F.Supp. 753, 758 (N.D. Ohio 1981). Finally, the convenience of the parties will not be significantly hampered by allowing Collins to bring suit in the Eastern District. Venue is proper in the Eastern District because MECECU has sufficient contacts to make venue proper under 28 U.S.C. § 1391.

B.      *Motion to Transfer to the Western District of Missouri*

28 U.S.C. § 1404(a) governs MECECU's motion to transfer. Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2000).[4] Thus, the court will consider a motion to transfer based on three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). Courts are not limited to the three general principles enumerated in 28 U.S.C. 1404(a); instead, "[a] motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., v. Ricoh, Corp.*, 487 U.S. 22, 29 (1988). The

---

[4] When considering a motion to transfer under 28 U.S.C. § 1404(a), a court must first establish subject matter jurisdiction and proper venue. *Naegler v. Nissan Motor Co., Ltd.*, 835 F.Supp. 1152, 1156 (W.D. Mo. 1993). 28 U.S.C. § 1331 establishes subject matter jurisdiction for federal questions. MECECU's principal place of business is in the Western District; therefore venue is proper there.

8

Eighth Circuit has noted several factors that courts consider when evaluating convenience and justice. *Terra Int'l, Inc.*, 119 F.3d at 696. When considering the balance of convenience, additional factors to consider include:

> (1) the convenience of the parties, (2) the convenience of the witnesses--including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred and (5) the applicability of each forum state's substantive law.

*Id*. Additionally, when considering the interest of justice, potential considerations include: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Id*. This Court recognizes that "federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Id*. at 695.

Utilizing the factors noted in *Terra International, Inc.*, the convenience of the parties factor weighs slightly in favor of transferring this matter to the Western District. MECECU maintains its principal place of business in the Western District, and Collins maintains his residence in the Eastern District. Currently, Collins is incarcerated in Tennessee; therefore, Collins would have to travel regardless of the forum. Both parties maintain records that concern Collins' account in their respective districts. Collins posits that the records and files concerning his incarceration are in the Eastern District, and Collins would endure a significant burden transporting files to the Western District. Both parties claim that the events which led to the

9

litigation occurred solely in their respective districts. Although Collins received the statement which made him aware of the discrepancy in his account in the Eastern District, the court finds that the location of the conduct complained of occurred in the Western District. MECECU's denial of liability for fraudulent purchases on Collins' credit card, failure to provide periodic statements, and delay in responding to Collins' request for action all occurred in the Western District.

When evaluating a motion to transfer under 1404(a), "[c]onvenience of the witnesses is a primary, if not the most important, factor." *Biometics, L.L.C. v. New Womyn, Inc.*, 112 F.Supp.2d 869, 876 (E.D. Mo. 2000). The convenience of the witnesses weighs in favor of Collins. MECECU points to two witnesses, MECECU's manager and an employee that communicated with Collins, that would be inconvenienced by potential travel. Additionally, MECECU notes two other potential witnesses that work in Member Services at MECECU. Any background information concerning MECECU's procedures for handling share-holder's complaints could be obtained by other means. MECECU only proffers one witness that will potentially testify as to his interactions with Collins by telephone; this witness works in the Western District. Collins points to two primary witnesses located in the Eastern District. Both witnesses listened to conversations that Collins had with MECECU representatives over the telephone. Additionally, Collins points to witnesses that will testify about the existence and procedure for handling inmate mail, to witnesses that will verify that Collins orally notified MECECU, and to witnesses that will verify that Collins sent a letter of dispute to MECECU. All of Collins potential witnesses work in the Eastern District. Any background information as to Collins' correspondence could be

obtained by other means. Collins presents two potential witnesses that will testify as to his conversation with MECECU. The convenience of the witnesses slightly favors the suit remaining in the Eastern District.

Finally, the interest of justice prong weighs heavily in favor of Collins. Collins chose to bring this suit in the Eastern District, and the "federal courts give considerable deference to a plaintiff's choice of forum." *Terra Int'l, Inc.*, 119 F.3d at 695. Additionally, "where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Wells' Dairy, Inc. v. Estate of Richardson*, 89 F.Supp.2d 1042, 1056 (N.D. Iowa 2000) (quoting *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y. 1991)). The courts grant of Collins' motion to proceed *in forma pauperis* demonstrates the disparity between his resources and MECECU's resources. Collins would incur higher travel costs for his witnesses and himself if he is required to litigate in the Western District.

Based upon the convenience of the parties, the convenience of the witnesses, and the interest of justice, Collins' choice of forum in the Eastern District should be upheld.

**III.    Conclusion**

Venue is proper in the Eastern District because MECECU's contacts satisfy the federal venue statute. The balancing of convenience and the interest of justice weigh in favor of maintaining Collins' choice of forum.

Accordingly,

11

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue (doc. #6) is **DENIED**.

So Ordered this 20th day of July, 2005.

_____
 E. RICHARD WEBBER
 UNITED STATES DISTRICT JUDGE